Kathryn G. Spelman, Esq. (Cal. Bar No. 154512)
Daniel H. Fingerman, Esq. (Cal. Bar No. 229683)
Mount, Spelman & Fingerman, P.C.
RiverPark Tower, Suite 1650
333 West San Carlos Street
San Jose CA  95110-2740
Phone: (408) 279-7000
Fax:     (408) 998-1473
Email: kspelman@mount.com, dfingerman@mount.com

Counsel for San Francisco Technology Inc.

United States District Court
Northern District of California, San Francisco Division

| | |
|---|---|
| San Francisco Technology Inc.<br><br>Plaintiff<br><br>vs.<br><br>Unilock Inc.<br><br>Defendant | Case No. 5:09-cv-01656-RS-HRL<br><br>**Brief Concerning Settlement** |

Plaintiff San Francisco Technology Inc. ("SF Tech") submits this brief requested in the court's order dated December 23, 2010.

## Introduction

This court should dismiss this suit with prejudice as the parties have jointly requested, since the parties have already voluntarily given the United States an opportunity to review and approve their settlement and paid one-half of the settlement money to the United States.

The court requested briefing on three questions concerning the obligations of the parties and the court when the parties to a private *qui tam* suit for false patent marking enter into a settlement and seek dismissal of the suit. The court's questions indicate a thoughtful review of the record and a genuine concern that the public interest be protected. The parties have already provided for the public interest in their settlement, so there should be no need for judicial review of their agreement. The United States does have an interest in the outcome of privately-filed *qui tam* suits for false patent marking and naturally should have some involvement in their settlement. In this case, the United States did have such involvement and received one-half of the settlement proceeds.

SF Tech and Unilock have already involved the United States in the settlement process and paid the United States half of the settlement money. Before consummating their settlement, the parties voluntarily informed the United States about the facts of this case and the proposed terms of the settlement. After hearing the parties' presentation and having an opportunity to ask questions and to do any other investigation, the United States elected not to oppose the settlement and dismissal of this action with prejudice. Additionally, although the statute is silent on this point, it appears that Congress intended that the United States should receive half of any settlement. Therefore, SF Tech voluntarily negotiated a term in the settlement under which the United States would receive one half of the money that Unilock paid as part of the settlement.

SF Tech is not providing a copy of the parties' settlement agreement to the court at this time because a term in the agreement provides that the agreement is confidential. If this court wishes to order a review the agreement before entering the dismissal order, SF Tech will not object to filing a copy of the agreement under seal. However, before such review and filing under seal is ordered, Unilock should be given an opportunity to be heard.

## I. Factual and Procedural Background

SF Tech filed its original complaint on December 30, 2009. The complaint alleges that Unilock used false patent markings in its advertisements on its web site at www.unilock.com, with intent to deceive the public. SF Tech sued Unilock for false patent marking as a *qui tam* relator under 35 U.S.C. § 292. Shortly after filing the complaint, SF Tech's counsel provided a copy of the complaint and discussed this case with John Fargo, the Director of the Intellectual Property Staff in the Commercial Litigation Branch of the Civil Division of the United States Department of Justice (USDOJ), based in Washington, DC. Mr. Fargo is the high-ranking representative of the USDOJ who has been "quarterbacking" the United States' involvement in issues and litigation relating to false patent marking.

SF Tech's original complaint names 15 defendants, and the original case was captioned *San Francisco Technology Inc. v. Adobe Systems Inc. et al.*, Case No. 5:09-cv-06083-RS. The defendants responded to the complaint by filing motions to dismiss and to stay this case pending the Federal Circuit's ruling in *Stauffer v. Brooks Brothers*. On April 19, 2010, this court granted the motions to stay and denied without prejudice the motions to dismiss. In its April 19, 2010 order, this court also severed each defendant into its own separate case. After the Federal Circuit issued its ruling, *Stauffer v. Brooks Brothers Inc.*, 619 F.3d 1321 (Fed. Cir. August 31, 2010), the stay of this case was lifted.

In December 2010, SF Tech and Unilock agreed to settle all claims between them and executed a written settlement agreement. They jointly held a conference call with John Fargo. During that call, the parties explained to Mr. Fargo the terms of the settlement, the arm's-length nature of the negotiations and the agreement, and the business reasons for the settlement. After being so informed, the USDOJ informed the parties that the United States would not oppose their settlement. On December 20, 2010, the parties executed a written settlement agreement. On December 22, 2010, the parties filed a stipulation to dismiss this case with a proposed order.

The following day (on December 23, 2010), this court entered an order (Docket No. 15), directing SF Tech to file a brief responding to these three questions:

> 1. Must a plaintiff settling an action such as this remit one-half of the settlement proceeds to the government, and if so, what arrangements have been made to do so here?

> 2. What right, if any, does the government have to receive notice of, and an opportunity to object to, a settlement under circumstances like these?
>
> 3. What obligation, if any, does the Court have to review and approve the terms of any settlement in a case brought under 35 U.S.C. § 292 by a private plaintiff? *Compare*, *U.S. ex rel Sharma v. University of Southern California*, 217 F.3d 1141, 1143 (noting that the False *Claims* Act, 31 U.S.C. §§ 3729-3731, "provides that the district court must approve a proposed settlement in a qui tam case.").

## II. Response to the Court's Questions

### 1. Payment to the United States

The court's first question is:

> 1. Must a plaintiff settling an action such as this remit one-half of the settlement proceeds to the government, and if so, what arrangements have been made to do so here?

SF Tech has filed many suits for false patent marking and has entered into written agreements to settle some of those suits. In each case, SF Tech has negotiated a provision in the settlement agreement which provides that one-half of any settlement money be paid to the United States. In this case, the settlement agreement provides that Unilock pay SF Tech a sum of money, then SF Tech pay half that amount to the United States. SF Tech mailed that payment to the United States on December 23, 2010.

In each settlement that SF Tech has entered into thus far, SF Tech has voluntarily negotiated a similar a term, providing that the United States receive one-half of the money paid. Although the law does not expressly address this precise point, it appears to be the intent of Congress in 35 U.S.C. § 292(b), which provides: "Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." Accordingly, SF Tech has voluntarily negotiated such a term in all of its settlement agreements in false patent marking cases, including the settlement agreement in this case.

### 2. Notice to U.S. Government and Opportunity to Object

The court's second question is:

2. What right, if any, does the government have to receive notice of, and an opportunity to object to, a settlement under circumstances like these?

The United States has an important right that it be fully informed about each false patent marking case and about the settlement of such cases. SF Tech makes efforts to keep the United States informed about its false patent marking suits and to provide the government with every opportunity to review settlements before they are consummated. As this court noted in its December 23 order, "A final disposition of the action, even where the government has not intervened, has the potential to serve as a *res judicata* bar to a subsequent effort by the government to recover from the defendant for the same false marking. *See Stauffer*, 613 F.3d at 1329." SF Tech agrees with this statement of the law and has taken steps to ensure that the United States has had an opportunity to review each settlement and decide whether it should intervene in each case.

SF Tech maintains an active and amicable relationship with the USDOJ and its staff who have responsibilities concerning enforcement false patent marking statute, 35 U.S.C. § 292. John Fargo is the Director of the USDOJ's Intellectual Property Staff in the Commercial Litigation Branch of the Civil Division, based in Washington, DC. Mr. Fargo is the USDOJ's primary public contact person for the public for matters relating to false marking and is the USDOJ's "quarterback" for its efforts in this area.

Each time SF Tech reaches an agreement to settle a false marking case, it schedules a conference call with Mr. Fargo and counsel for the defendant. The purpose of this conference call is to inform the USDOJ about the settlement. Typically, SF Tech provides a copy of the pleadings to Mr. Fargo in advance of the call. During the call, the parties' counsel explain to Mr. Fargo the nature of the products at issue, any significant defenses and legal or factual disputes in the case, the significant terms of their settlement, and the amount to be paid. Thus far, each of SF Tech's settlements (including this one) has included a term providing that the United States will receive half of the money being paid to settle the case. Mr. Fargo typically asks questions of the parties' counsel and explains his thoughts about the case and the settlement. Usually, Mr. Fargo is able to tell the parties at the end of this conference call whether the United States will — or will not — object to the settlement. In this case, Mr. Fargo stated at the end of the call that the United States will not object to

this settlement and the dismissal of this case with prejudice.

Sometimes, during the conference call, Mr. Fargo has requested to see a copy of a settlement agreement or a proposed order of dismissal or judgment. On other occasions, one or more parties have asked Mr. Fargo to review such documents. In either event, SF Tech's counsel has provided the documents to Mr. Fargo via email, and he has reviewed them. After that review, another conference call may be scheduled, or Mr. Fargo may simply respond via email that the United States does not oppose the settlement. In this case, this kind of further review was not requested by anyone.

The United States has never objected to any settlement in any suit brought by SF Tech. SF Tech is proud of its consistent record satisfying the United States' interests.

**3. Court Review and Approval of Settlement Agreement**

The court's third question is:

> 3. What obligation, if any, does the Court have to review and approve the terms of any settlement in a case brought under 35 U.S.C. § 292 by a private plaintiff? *Compare*, *U.S. ex rel Sharma v. University of Southern California*, 217 F.3d 1141, 1143 (noting that the False *Claims* Act, 31 U.S.C. §§ 3729-3731, "provides that the district court must approve a proposed settlement in a qui tam case.").

Nothing requires this court to review a settlement agreement in a *qui tam* false patent marking case, so long as the United States has had an opportunity to review it and receives one-half of the settlement money. The court should take a skeptical view of any settlement where the United States was not fully informed of the facts and circumstances of the case. However, that is not the scenario in this case.

The False Claims Act does require active judicial approval of settlements. However, that statute is very different from the false patent marking statute, 35 U.S.C. § 292. The False Claims Act provides detailed statutory mechanisms for the federal government to control *qui tam* litigation brought under that statute, should it wish to do so, and for judicial oversight of private settlement agreements. That Act also expressly provides that its terms apply only to civil actions brought under its authority and does not apply to civil actions brought under other statutes. In contrast, the false patent marking statute has no such provisions, and no court has interpreted it to require the same kind of active judicial supervision as the False Claims Act requires.

Since 2009, several courts have compared the features of the false patent marking statute to the features of the False Claims Act. *See e.g.*, *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009) ("*Pequignot 2*"). Apparently, only one court has made a ruling relevant to the question posed by this court. In July 2010, the District Court in the Northern District of Illinois rejected a suggestion that it should apply rules arising under the False Claims Act to a case arising under the false patent marking statute. In *Simonian v. Hunter Fan Co.*, 2010 U.S. Dist. Lexis 68013 (N.D. Ill. 2010), the court held that the first-to-file rule in the False Claims Act cannot be applied to cases arising under any other *qui tam* statute. After so holding, the court denied a motion to dismiss plaintiff Simonian's complaint, even though a different *qui tam* relator had filed an earlier suit against Hunter Fan, alleging substantially the same claim.

Accordingly, this court does not have an obligation to review a settlement between private parties in suit for false patent marking brought by a private *qui tam* relator — especially in a case like this, where the United States government has been actively involved in the settlement process.

## Conclusion

The parties have already provided for the court's concerns over the public interest when they negotiated their private settlement agreement. The settlement provides that that United States will receive one-half of the settlement money, and that payment has already been given to the United States. The parties voluntarily gave the United States ample notice of the settlement and an opportunity to ask questions. With this knowledge of the facts and circumstances, the United States declined to object to the settlement. Finally, nothing in the false patent marking statute requires judicial review of private settlement agreements. Accordingly, this court should enter an order dismissing this suit with prejudice.

Date: January 17, 2011    Mount, Spelman & Fingerman, P.C.,

    /s/ Daniel H. Fingerman
Counsel for San Francisco Technology Inc.

**Certificate of Service**

The undersigned certifies that the foregoing document was filed using the court's electronic filing system (ECF). The ECF system serves a "Notice of Electronic Filing" to all parties and counsel who have appeared in this action, who have consented under to accept that Notice as service of this document.

Date: January 17, 2011               Mount, Spelman & Fingerman, P.C.,

  /s/ Daniel H. Fingerman
Counsel for San Francisco Technology Inc.

Z:\CLIENTS\F CLIENTS\False001\Attorney_Notes\Drafts\Unilock\Brief Re Settlement v2.doc